UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

PENNY A. RICHARDS,                  )
                                    )
        *Plaintiff*,                )
                                    )        Case No. 2:08-cv-279
v.                                  )        Judge Mattice
                                    )
JOHNSON & JOHNSON, *et al.*,        )
                                    )
        *Defendants.*               )

## MEMORANDUM AND ORDER

Plaintiff Penny Richards brought this action against Johnson & Johnson ("J & J"),

Reed Group, Ltd. ("Reed Group"), Janssen Pharmaceutica, Inc. ("Janssen"), the Pension

Committee of Johnson & Johnson ("Pension Committee"), and the Long Term Disability

Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated

Companies ("LTD Plan" or "Plan").[1]  Plaintiff alleges a cause of action under 29 U.S.C. §

1132(a)(1)(B). [Court Doc. 1, Compl.] The Complaint seeks judicial review of a termination

of long-term disability ("LTD") insurance benefits under the Plan, which took effect as of

January 10, 2007.

Before the Court are Plaintiff's motion for judgment on the pleadings (essentially a

motion for judgment on the administrative record) [Court Doc. 30], and Plaintiff's motion

to strike a portion of the administrative record [Court Doc. 29].  Pursuant to 28 U.S.C. §

636(b)(1), the Court referred this matter to United States Magistrate Judge Susan K. Lee

for a Report and Recommendation ("R&R") on the above motions.  Magistrate Judge Lee

entered her R&R [Court Doc. 36] on September 30, 2009.  Magistrate Judge Lee

---

[1]     The Court will generally refer to these parties collectively as "Defendants" throughout, unless
the factual circumstances require the Court to refer more specifically to a single Defendant.

construed Defendants' response to Plaintiff's Motion to Strike Administrative Record as a cross-motion to strike the record and recommended that both motions to strike be denied. Magistrate Judge Lee further recommended that the termination of Plaintiff's benefits be reversed and that the matter be remanded to Defendant. Finally, Magistrate Judge Lee recommended that Defendant's motion for judgment on its counterclaim be denied. Both Plaintiff and Defendants filed timely objections and responses to those objections. [Court Docs. 37-40.]

For the reasons stated below, the Court **ACCEPTS AND ADOPTS** Magistrate Judge Lee's Report and Recommendation.

## I. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R&R to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). For those portions of the R&R to which objections have been filed, the Court will directly review the decision-making process underlying the Defendant's denial of benefits.

A claim under 29 U.S.C. § 1132(a)(1)(B) for denial benefits is to be reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the administrator or fiduciary is afforded discretion by the plan, the decision is reviewed under the arbitrary and capricious standard. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). The Plan documents here assert that the Pension Committee has discretion to interpret

Plan terms. (Administrative Record ("AR") at 489.) This Court will therefore conduct its review under the arbitrary and capricious standard.

Under 29 U.S.C. §1132(a)(1)(B), a court's review is limited to the administrative record as it existed when the plan administrator made its final decision. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378-79 (6th Cir. 2005). Arbitrary and capricious is one of the least demanding forms of review. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "Nevertheless, merely because our review must be deferential does not mean our review must also be inconsequential." *Id.* A court must "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.* at 172. If the administrative record does not show that the administrator offered a "reasoned explanation" based on substantial evidence, the decision is arbitrary or capricious. *Moon*, 405 F.3d at 379. Substantial evidence means "much more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McDonald*, 347 F.3d at 171.

## II.  FACTS

The report and recommendation outlined the applicable facts at length. The parties have not objected to the facts statement contained in Magistrate Judge Lee's R&R. The Court finds no error in Magistrate Judge Lee's findings of fact. Accordingly, the Court hereby **ADOPTS BY REFERENCE** the entire background section of the R&R. (Court Doc. 36, R&R at 2-11.)

### III.    ANALYSIS

#### A.    Competing Motions to Strike

Plaintiff objects to Magistrate Judge Lee's recommendation that her Motion to Strike parts of the administrative record be denied. (Court Doc. 37, Pl.'s Objs. at 1.) To create the administrative record, Defendants filed the Plan document and Summary Plan Descriptions ("SPDs") for years 2004, 2005, 2006, 2007, and 2008. (AR at 465-494, 31-464.) Plaintiff argues in her Motion to Strike that she was only provided with the SPDs for years 2004 and 2005 prior to this litigation; therefore, the Plan document and SPDs for all other years should be stricken from the administrative record. (Court Doc. 29, Pl.'s Mot. to Strike at 2-3.) Specifically, Plaintiff contends that Defendants failed to comply with various ERISA statutes when they failed to provide her with plan documents and SPDs for other years, especially if any of the documents related to the appeals process Plaintiff followed before commencing this action. (*Id.*) Furthermore, Plaintiff requests that the "track changes" versions of the 2004 and 2005 SPDs currently in the administrative record be replaced with the "clean" copies of these documents that were provided to Plaintiff. (*Id.* at 4.)

Defendants' pleading in response was construed by Magistrate Judge Lee as a competing Motion to Strike. (R&R at 12 n.6.) Defendants asserted that the Plan document, included in the page numbers that Plaintiff seeks to strike, must remain part of the record because it was considered in the decision to terminate Plaintiff's benefits. (Court Doc. 32, Def.s' Resp. to Mot. to Strike at 3, 5-7.) Defendants conceded that Plaintiff's request to strike SPDs from years 2006, 2007, and 2008 was proper because

those documents were not used in the decision-making process. (*Id.* at 3-4, 8.) Defendants argued, however, that the SPDs from years 2004 and 2005 should also be stricken from the record, as no SPD was used or considered when deciding to terminate Plaintiff's LTD benefits. (*Id.* at 7-8.) Magistrate Judge Lee found that all of the documents filed as part of the administrative record comprised the facts available to the plan administrator when the decision was made to terminate Plaintiff's benefits. (R&R at 12.) Magistrate Judge Lee concluded, therefore, that the Court could properly review all of the submitted documents in evaluating Plaintiff's claim, and recommended that both Motions to Strike be denied. (*Id.*)

The Court notes that Plaintiff's objection offers no additional support for her Motion to Strike and simply refers to her previously filed memoranda. (Pl.'s Objs. at 1-2.) After reviewing the report and recommendation and the record in this case, the Court agrees with Magistrate Judge Lee's conclusion that all of the documents filed should remain part of the administrative record. The Court further notes that the overall record in this case has both the "track changes" and clean copies of SPDs for 2004 and 2005, and the Court has reviewed the "clean" copy when necessary; however, the Court sees no cogent purpose in disturbing the numbered administrative record to officially replace these documents. Therefore, Plaintiff's objections are **OVERRULED** and the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's recommendation to deny both Motions to Strike.

### B. Statute of Limitations

Neither party objected to Magistrate Judge Lee's conclusion that Plaintiff's claim was timely because the limitations period in the Plan document did not apply. (R&R at 17.)

Accordingly, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's recommendation on this issue and adopts by reference that section of her R&R. (R&R at 12-19.)

### C. Factors to Consider Under Arbitrary and Capricious Standard

#### 1. *Conflicts of Interest*

Plaintiff objects to Magistrate Judge Lee's finding that there was no structural conflict of interest or bias that affected her claim for LTD benefits. (Pl.'s Objs. at 2.) Magistrate Judge Lee reviewed the structure of the LTD payments and determined that the Pension Committee, not Johnson & Johnson, reviewed claims for benefits, and that all LTD benefits were paid out of a trust funded only by employee contributions. (R&R at 22.) Therefore, because Johnson & Johnson neither made the eligibility decisions nor paid benefits from an account that contained employer contributions, Magistrate Judge Lee found that there was no structural conflict of interest. (*Id.*) Magistrate Judge Lee also reviewed Plaintiff's assertion that a conflict of interest existed based on Defendants' knowledge that Plaintiff's claim would cost Johnson & Johnson almost one million dollars. Magistrate Judge Lee found that this evidence was insufficient because Defendants' knowledge of the cost of Plaintiff's claim could not alone establish bias. (*Id.* at 22-23.)

Plaintiff did not assert any new argument or evidence in her objection to these findings and instead simply referred the Court to her earlier memoranda. (Pl.'s Objs. at 2.) In an ERISA case, there is a conflict of interest "where it is the employer that both funds the plan and evaluates the claims. . . . The employer's fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary." *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). The Court

agrees with Magistrate Judge Lee's conclusion that no structural conflict of interest exists. Johnson & Johnson does not fund the benefit plan in question, and there is a separate Pension Committee that evaluates the claims and makes determinations as to eligibility for benefits. This is a very different structure compared to the one contemplated in *Glenn*, and Magistrate Judge Lee properly found that it did not constitute a structural conflict of interest. Accordingly, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's finding that no structural conflict of interest existed that affected Plaintiff's claim.

Plaintiff failed to provide any additional evidence of bias on objection; therefore, the Court finds that Plaintiff has not asserted any significant evidence to prove that a conflict of interest existed because Defendants' decision was only motivated by cost saving considerations. The Court notes again that Johnson & Johnson did not determine eligibility for benefits; therefore, its mere knowledge of the possible amount of the claim is not "significant evidence" that the cost savings motivated Defendants' decision to deny Plaintiff's LTD benefits claim. *See Muse v. Central States*, 227 F. Supp.2d 873, 877 (S.D. Ohio 2002). The Court concludes that Plaintiff failed to provide evidence that a conflict of interest influenced Defendants' decision. Accordingly, the Court also **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's finding that Plaintiff has not proven any conflict of interest due to bias. Plaintiff's objections on both points are therefore **OVERRULED**.

2. _Inconsistency with Social Security Disability Award_

Plaintiff objects to Magistrate Judge Lee's finding that there was no inconsistency between the determination that Plaintiff was totally disabled for Social Security Disability ("SSD") benefits and Defendants' determination that Plaintiff was not eligible for LTD

benefits. (Pl.'s Objs. at 2.) Defendants also object to this finding; however, Defendants assert that Magistrate Judge Lee misunderstood the language in a letter sent to Plaintiff concerning the denial of her appeal, and due to this misunderstanding, Defendants did not take the position that Plaintiff was *not* totally disabled except in the context of Plaintiff's refusal to complete the scheduled independent neuropsychological examination ("INE"). (Def.s' Objs. at 8-9.) Defendants assert that the statement that Plaintiff had not substantiated her disability only meant that she could not classify as Totally Disabled under their definition because she had not cooperated with the INE. (*Id.*)

Magistrate Judge Lee found that there was no inconsistency between Plaintiff's award of SSD benefits and Defendants' termination of Plaintiff's benefits, if Defendants' reason for termination was that Plaintiff did not cooperate with the Plan when she did not participate in the INE. (R&R at 23-24.) Magistrate Judge Lee also found, however, that Defendants' statements in a letter denying Plaintiff's appeal created an inconsistency with Plaintiff's award of SSD benefits because the letter indicated that there was insufficient documentation of Plaintiff's disability. (*Id.* at 24.)

The Court finds that Plaintiff's objection is not relevant because Magistrate Judge Lee did find an inconsistency between the award of SSD benefits and the denial of LTD benefits; her initial finding that there was no inconsistency was premised on accepting the reasoning that Defendants raise consistently as the basis for terminating Plaintiff's benefits–that she did not cooperate with the terms of the Plan when she failed to participate in the January 2007 INE. Magistrate Judge Lee found that there *was* an inconsistency, however, because for all intents and purposes, the alleged failure of Plaintiff to attend the INE led Defendants to terminate benefits based on the assertion that they

-8-

lacked sufficient information to determine that she was totally disabled.

When Defendants initially terminated Plaintiff's benefits, the letter stated as follows:

> We have attempted to obtain the documentation necessary to certify your ongoing disability. To facilitate this process, we requested you to submit to an Independent Medical Examination (IME) on January 10, 2007 at 8:30 am with Kristie J. Nies, Ph.D.
>
> . . .
>
> According to the IME report of 1/10/2007 from Dr. Kristie J. Nies, "Planned testing could not be completed." . . . As a result, Dr. Nies was unable to diagnose your current condition or address your current work capabilities.
>
> Additionally, as per the requirements of the Johnson & Johnson LTD Plan, **it is your responsibility to provide proof of continuing disability as requested**. After a thorough and careful review of your claim, it is our opinion that you are no longer eligible to receive benefits under the Plan as you have not provided proof that you are "disabled" as defined by the provisions of your employer's Long-Term Disability Plan. **As such, your LTD status will cease as of 1/10/2007.**

(AR at 698-99.) (emphasis in original). Therefore, Defendants' initial decision was based on a lack of information to substantiate Plaintiff's disability, and that lack of information was directly tied to Plaintiff's failure to participate in the INE. The relevant portions of the letter sent to Plaintiff denying her first appeal are also reproduced below:

> Based upon the review of the submitted medical documentation, we have determined that the documentation does not substantiate your disability as defined by the Johnson & Johnson LTD Plan:
>
> > *In no event shall a Participant be considered Totally Disabled or remain Totally Disabled for purposes of this Plan, and no benefit under this Plan shall be payable:*
> >
> > •   *On or after the date a Participant fails or refuses to attend an examination by a Provider or Plan Provider at the Claims Service Organization's or*

*Plan Administrator's request.*

*. . .*

> *Failure or refusal by the Participant to cooperate in the medical evaluation, including refusal to release medical or other records, refusal to submit to a medical examination, or refusal to cooperate on working with reasonable accommodation, shall constitute grounds for termination* [sic] *benefits under the Plan.*

(*Id.* at 739.) (emphasis in original). This letter then repeats statements made in the letter terminating benefits regarding Plaintiff's failure to participate in the January 2007 INE. (*Id.*) Magistrate Judge Lee construed the first quoted sentence as indicating that Defendants had terminated benefits based on a lack of information from which to determine if Plaintiff was totally disabled, and found that this statement, made on May 8, 2007, was inconsistent with Plaintiff's SSD award of January 23, 2007.

Defendants now contend that Plaintiff's benefits were terminated *solely* because of her failure to participate in the INE. (Def.s' Objs. at 8; Court Doc. 34, Def.s' Resp. at 17-18.) Defendants claim, therefore, that the statement in the appeal denial letter about a lack of medical documentation to substantiate disability "refer[s] only to the exclusion of Plaintiff from the definition of Total Disability in light of her refusal to cooperate in the INE." (Def.s' Objs. at 9.) The Court cannot accept this explanation as valid. When Defendants initially terminated Plaintiff's benefits, they informed her of her right to appeal and stated that she should "submit any written comments, documents, records, or other information relating to your claim that you believe appropriate." (AR at 699.) Defendants also stated that "Reed Group's Appeal Administrator will provide you with a *full and fair review* of your claim and this benefit denial decision. The review on appeal will take into account *all comments, documents, records, and other information submitted that relates to the claim, even if not*

-10-

*previously submitted or not considered in the initial decision.*" (*Id.*) (emphasis added).

When Plaintiff submitted her initial letter indicating that she was appealing the termination, she received a letter from Defendants which states that "additional supporting medical information is necessary *to determine whether or not you qualify for Long Term Disability benefits.*" (*Id.* at 723.) After much correspondence between Reed Group and Plaintiff regarding non-receipt of the initial letter, Plaintiff responded by procuring her records from Broadspire, the company that handled her claim prior to Reed Group, and sent them to Reed Group for review. (*Id.* at 723-25, 730-38.) Defendants' log of activity on Plaintiff's claim contains a notation that they received medical records on April 30, 2007 and May 3, 2007, and a notation on April 30, 2007 that the denial would be upheld because Plaintiff "did not supply medical information to support why she could not do IME." (*Id.* at 806-07.)

This was not the appeal review promised in Plaintiff's termination letter. The termination letter clearly stated that Plaintiff lacked documentation to certify her ongoing disability, not that she lacked documentation to prove that she was unable to complete the INE. (*Id.* at 698-99.) Plaintiff offered more medical records to cure the lack of information available to Defendants when they terminated her benefits, but it appears that this additional documentation was essentially ignored and Defendants changed their reasoning to make the termination solely about Plaintiff's incomplete INE. It was not until the letter denying Plaintiff's first appeal that Defendants stated that they required information to explain why Plaintiff could not participate in the INE. (*Id.* at 739.) Even this statement begins with the word "additionally," as if it is a secondary issue to the fact that Defendants apparently lacked information to certify Plaintiff's disability. (*Id.*) Essentially, however,

even if Defendants claim that they required information to establish why Plaintiff could not participate in the INE, all of Defendants' assertions to justify the termination of benefits circle back to the main issue–*Defendants did not have enough information to determine if Plaintiff was totally disabled for any occupation.* Regardless of Defendants' claims, the Court cannot ignore the plain language of these letters, and the letters indicate that the incomplete INE and the lack of information are inextricably linked. Together, this formed the basis for terminating Plaintiff's benefits.

Accordingly, although a termination of Plaintiff's benefits for failure to participate in the INE would not create an inconsistency with an SSD award, a termination for lack of information to substantiate disability certainly does. Because Plaintiff's incomplete INE led to allegedly insufficient information for Defendants to review to determine Plaintiff's disability status, there is an inconsistency with the SSD award. If the Social Security Administration had sufficient information with which to determine that Plaintiff was totally disabled, Defendants likely also had sufficient information to make a disability determination. Instead, they made no determination either way and terminated Plaintiff's benefits based on an alleged lack of information due to the incomplete INE.

Defendants' own language makes it impossible to separate the INE from the assertion of insufficient information, and the Court cannot accept Defendants' contention that the termination was solely based on Plaintiff's failure to participate in the INE. Accordingly, the Court rejects Defendants' objection to Magistrate Judge Lee's finding in this regard. The Court agrees that there was an inconsistency with the finding of total disability by the Social Security Administration and Defendants' denial of benefits based on a lack of information to certify Plaintiff's disability, and will consider this factor in

-12-

reviewing Defendants' decision under the arbitrary and capricious standard. Therefore, the Court **OVERRULES** Plaintiff's and Defendants' objections and **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's conclusion that an inconsistency with the SSD award existed and should be considered.

### D. Defendants' Decision to Terminate Plaintiff's LTD Benefits Was Arbitrary and Capricious

Defendants object to Magistrate Judge Lee's finding that the termination of Plaintiff's benefits was procedurally and substantively arbitrary and capricious. (Def.s' Objs. at 5-7.) Magistrate Judge Lee reviewed the procedure pursuant to which Defendants terminated Plaintiff's benefits and determined that Defendants did not explain how Plaintiff failed to *cooperate* with the Plan requirements when she did not complete the INE. (R&R at 25.) Magistrate Judge Lee found that this failure indicated that Defendants did not properly follow the required procedures to explain to Plaintiff why her benefits were being terminated, and this was procedurally arbitrary and capricious. (*Id.* at 25-26.) Defendants merely cited the Plan language in its termination and appeal denial letters, but never explained how they reached the conclusion that Plaintiff was not cooperating with the Plan. (*Id.*)

Magistrate Judge Lee also found a substantive abuse of discretion because Defendants terminated Plaintiff's benefits for failing to cooperate with the INE, but did not have the discretion to interpret the word "cooperate" so broadly. (*Id.* at 26-27.) Magistrate Judge Lee concluded that Plaintiff's objections to participating in the INE were reasonable because there was sufficient evidence on the record to indicate that Plaintiff was cooperative, but medically unable to complete the battery of testing. (*Id.* at 26-29.)

-13-

Defendants assert that there was substantial evidence in the record to support the decision to terminate Plaintiff's benefits and the decision was not arbitrary or capricious. (Def.s' Objs. at 2.) More specifically, Defendants claim that Plaintiff's inability to participate in the INE is not credible because Plaintiff did not tell Reed Group that she was medically unable to complete the INE when she first corresponded with them in November 2006 regarding the initially scheduled date for the INE. (*Id.* at 3-4.) Defendants also contend that the medical proof does not establish that Plaintiff was medically unable to complete the INE; therefore, Defendants' decision to terminate Plaintiff's benefits was valid. (*Id.* at 5-6.)

The crux of Defendants' first point is that, if Plaintiff was actually unable to complete the INE, she would have informed Reed Group accordingly when she called in November 2006 regarding the initial INE appointment. (*Id.* at 3-4.) Defendants scheduled Plaintiff's INE for November 29, 2006, and sent Plaintiff a notice of this appointment. (AR at 800.) Plaintiff called Reed Group upon receiving the letter on November 10, 2009, and merely told the representative that she had a previously scheduled neurological appointment on that day that could not be cancelled. (*Id.*) Plaintiff did not state that she was medically unable to participate in an INE until the examination was rescheduled for January 10, 2007. When Plaintiff received notification of the rescheduled INE, she called Reed Group on January 2, 2007 and informed the representative that she was unable to attend an eight hour test. (*Id.* at 801.) The Court notes that Defendants quote portions of entries from Reed Group's activity log that highlight Plaintiff's demeanor and attitude during both conversations, but the fact that Plaintiff was "rude," "manipulative," or "confrontational" on the phone does not provide sufficient evidence to find that Plaintiff's claim was not credible.

-14-

Instead, the Court finds Plaintiff's assertion that she had not consulted with her treating physicians prior to the November 2006 phone call to be more persuasive as the explanation for Plaintiff's failure to inform Reed Group at that time of her inability to complete the INE. (Pl.'s Resp. at 5-6.) Because Plaintiff called immediately upon receiving notice of the letter advising of the appointment, Plaintiff did not have the opportunity to seek advice from her physicians, and it is unlikely that Defendants would have credited her own, lay opinion. (*Id.*)

The Court also finds that Defendants did not properly explain the termination of Plaintiff's benefits. Defendants claim that Plaintiff's benefits were terminated because of her failure to cooperate with the INE, but the letter terminating Plaintiff's benefits concentrated solely on the alleged lack of medical documentation available to substantiate her disability. (AR at 698.) It said nothing about a failure on Plaintiff's part to explain why she could not participate in the INE. (*Id.*) The letter sent to Plaintiff in April during the appeals process likewise did not state that Plaintiff needed to provide documentation of her inability to participate in the INE; instead, that letter stated that "additional supporting medical information is necessary to determine *whether or not you qualify for Long Term Disability benefits*." (*Id.* at 723.) (emphasis added). It was only in the letter denying Plaintiff's first appeal that Defendants stated that "[a]dditionally, you did not supply any medical documentation with your appeal request to support *why you were medically unable to complete the IME*." (*Id.* at 739.) (emphasis added).

The Court cannot credit Defendants' assertion that it terminated Plaintiff's benefits due to her failure to participate in the INE because the evidence on the record

-15-

demonstrates that Defendants failed to even make such a statement, and certainly failed to adequately explain their contention that they did not have sufficient medical documentation. Instead, Defendants merely stated that there was a lack of medical proof to certify Plaintiff's disability, and cited from Plan language that no individual will be considered disabled if they "refuse[] to cooperate with respect to the evaluation of his/her Total Disability or continuing Total Disability." (*Id.* at 698.) The Court agrees with Magistrate Judge Lee's finding that Defendants completely failed to explain how Plaintiff's refusal to participate in the INE for medical reasons was a failure to cooperate with the evaluation of her disability. Furthermore, by failing to explain this conclusion and failing to indicate that Defendants sought information as to why Plaintiff could not participate in the INE, Defendants completely failed to provide Plaintiff with the information necessary to properly appeal the termination. This directly conflicts with Defendants' duties under 29 C.F.R. § 2560.503-1(g), because Defendants were required to explain what additional information would be necessary to perfect Plaintiff's claim. Instead, Defendants neglected to inform Plaintiff that Dr. Hollandsworth's letter was unacceptable. In addition, Defendants neglected to request any information verifying Plaintiff's inability to participate in the INE until after they had already denied Plaintiff's first appeal. This failure made it essentially impossible for Plaintiff to appeal her claim successfully. Therefore, the Court agrees with Magistrate Judge Lee's finding that Defendants' termination of Plaintiff's benefits was procedurally arbitrary and capricious.

The Court also finds that Plaintiff's inability to participate in the INE is supported by the medical evidence available in the record, and that her failure to participate was not a refusal to cooperate with the evaluation of her disability. Instead, Plaintiff had a valid and

reasonable claim that she was medically incapable of participating in a six to eight hour psychological test. Plaintiff was initially diagnosed with relapsing and remitting multiple sclerosis ("MS") in 2004. (*Id.* at 601.) In August 2005, Plaintiff began experiencing problems with anxiety and was referred for a psychiatric evaluation. (*Id.* at 511.) At the time of the evaluation, Plaintiff noted no problems with the MS treatment, but in retrospect, this may have been the beginning of significant MS-related cognitive changes in Plaintiff. (*Id.* at 512.) Dr. Inocalla indicated that Plaintiff was "very anxious and upset" and that she had "mood changes in the interview, expressing sadness, worry, anxiety, and confusion." (*Id.*) Dr. Inocalla described Plaintiff's symptoms as significant and restricted her from working at that time. (*Id.* at 513.) Broadspire apparently asked Plaintiff to seek a second opinion on her condition in August or September of 2005. Plaintiff's psychiatrists, Dr. Inocalla and Dr. Douglass, wrote a letter to Broadspire explaining Plaintiff's condition and her inability to participate in a six to eight hour examination–presumably an extensive round of psychological testing. (AR at 528-30.) The letter states, in relevant part:

> [W]e do not believe Ms. Richards can sit through a 6 to 8 hour examination at this time. As previously stated, she is in a fragile frame of mind just now, panic has increased, and paranoia regarding job related issues is at high level. She is easily decompensated, cries easily in our interviews, mood is labile, self-esteem is plunging, and cognitively she is not herself as she describes what she is normally like.
>
> . . .
>
> [I]t is our position to intervene when the stability of our patient is involved. We feel this situation could very well worsen Ms. Richards already existing psychiatric symptoms.

(*Id.*) Plaintiff did participate in an independent medical examination, however, in October 2005. The INE apparently had to be conducted over the course of two days, which was

longer than expected for a six to eight hour examination that can usually take place within one day.  (*Id.* at 537, 541.)  Dr. Lawhon described Plaintiff as "anxious and depressed," "overwhelmed," and displaying symptoms of post traumatic stress disorder and generalized anxiety disorder.  (*Id.* at 534-36.)  Plaintiff exhibited "emotional decontrol" during the testing, was "almost hysterical at times," and there was no evidence of malingering.  (*Id.* at 537.)  Dr. Lawhon indicated that she was not able to function in her occupation and stated that "there may be some cognitive impairment related to both the psychiatric disorder and to symptoms associated with multiple sclerosis."  (*Id.* at 539-40.)

In January 2006, Dr. Simnad wrote that Plaintiff's MS medication, Rebif, appeared to be increasing Plaintiff's mood lability.  (*Id.* at 607.)  Dr. Simnad noted that Plaintiff had experienced a stroke-like event in December 2005, during which Plaintiff was initially paralyzed on her left side and was admitted to the hospital for evaluation.  (*Id.* at 607-08.)  After a week in the hospital, Plaintiff had difficulty ambulating and was involved in additional therapy for weeks after the incident.  (*Id.* at 608.)  Plaintiff submitted to an INE with Dr. Kathleen Fuchs on March 6, 2006, and Dr. Fuchs found that "there has been significant compromise in [Plaintiff's] cognitive functioning. . . . Additionally, it appears that consistent with her MS diagnosis, there has been compromise in her cognitive efficiency such that she would be unable to return to work.  [Plaintiff] appears to be totally disabled from a cognitive and emotional standpoint."  (*Id.* at 625.)  Dr. Fuchs noted that Plaintiff ambulated stiffly with a cane, exhibited widely varying moods, and was cooperative with the examination, but was often confused and distracted and had difficulty concentrating. (*Id.* at 622-24.)

-18-

When Plaintiff received notice of the November 2006 appointment for the INE, she had just contacted Reed Group in late October to inform them that she was hospitalized for three weeks due to a severe allergic reaction to Copaxone, the medication she was taking for MS. (AR at 800.) Plaintiff also informed Reed Group that she was starting IVIG therapy as an outpatient every 10 days for six months. (*Id.*) In late November, Reed Group received a medical abstract from Dr. Inocalla and Dr. Douglass, Plaintiff's psychiatrists, after an appointment on November 10, 2006. (*Id.*) The psychiatrists had sent the document to the State of Tennessee Department of Human Services to assist Plaintiff's application for SSD benefits, and it indicates that Plaintiff's psychiatry team was closely following her MS treatment, as the MS and psychological symptoms were interrelated. (*Id.* at 650-653.) As such, the doctors had received medical records regarding her MS treatment and stated that "[Plaintiff] is noted to have increased lesions in the brain, with the last report we received showing almost triple the number since she was first diagnosed with MS. . . . Her latest mental status in our office, on 11-10-06, revealed a significant decrease in cognitive ability." (*Id.* at 652.) The psychiatrists also noted that "[w]ithout a doubt, our treatment team sees this patient's primary disability as being Multiple Sclerosis. . . . we have determined she is totally disabled at this time and will remain so . . . unless/until the status of her Multiple Sclerosis changes." (*Id.* at 652-53.) Plaintiff's cognitive disorder and generalized anxiety disorder were noted to be secondary to her diagnosis of MS.[2] (*Id.* at 653.)

---

[2] The Court notes that this conflicts with Reed Group's records, which list Plaintiff's primary disability as "Anxiety Disorder, Generalized." (AR at 797.) MS does appear as a diagnosis, but this notation has a diagnosis date of October 24, 2006, the day that Plaintiff called to inform Reed Group of her hospitalization for the reaction to Copaxone. (*Id.* at 798.) Plaintiff claims that this was only the second contact she had with Reed Group after they took over

-19-

The Attending Physician Statement filled out on November 10, 2006 by Dr. Inocalla indicated that Plaintiff's mental/nervous impairment was a Class 5 (severe limitations) and noted that Plaintiff's psychiatric symptoms were organic, stemmed from MS, and were unlikely to reverse. (AR at 644-45.) Dr. Inocalla also marked that Plaintiff was totally disabled for her own job or any other job, and that no change in this status was expected in the future. (*Id.*) On November 29, 2006, Plaintiff's primary care physician, Dr. Hollandsworth, filled out an Attending Physician Statement and indicated that Plaintiff had Class 5 severe limitations in regards to physical impairment. (*Id.* at 673-75.) Dr. Hollandsworth indicated that Plaintiff was totally disabled from any occupation without expected change and noted that Plaintiff had a "chronic noncurable condition" and that multiple attempts at treatment had failed. (*Id.*)

When Plaintiff called Reed Group on January 2, 2007, she stated that she was physically unable to participate in a six to eight hour INE, and Reed Group's representative advised her to obtain a statement from her physician to that effect. (*Id.* at 801.) At Plaintiff's request, Dr. Hollandsworth faxed a letter to Plaintiff and Reed Group, although

_____

the claims originally handled by Broadspire. (*Id.* at 759.) In addition, Reed Group's letter to the doctor scheduled to conduct Plaintiff's INE, Dr. Nies, states that "Ms. Richards has been losing time from work primarily due to a diagnosis of 300.02 Anxiety Disorder, Generalized since 8/8/2005." (*Id.* at 687.)

Plaintiff wrote in her second appeal letter that she questioned the need for an INE rather than an IME with a neurologist, and was informed by Reed Group that her LTD benefits were based on a diagnosis of PTSD, not MS. (*Id.* at 762.) The Court wonders if the independent *neuropsychological* examination was ordered based on Plaintiff's "primary" disability of Anxiety Disorder, when Plaintiff's true disability was MS and MS-related psychological symptoms that might have been better reviewed for the "any occupation" transition through an independent *medical* examination with a neurologist. Some of this confusion might be attributed to the switch from Broadspire to Reed Group, but the Court is not entirely convinced that Reed Group handled this claim appropriately when all the available medical records are considered.

-20-

it is uncertain when Reed Group received this letter. (*Id.* at 683.) The letter states that Plaintiff has "multiple disabling neurologic symptoms which are unequivocally and solely a result of her multiple sclerosis. Due to the severity of her symptoms she is medically unable to complete a standard neuropsychological battery." (*Id.*) The Court finds that this statement, read in context with the volume of medical records documenting Plaintiff's condition, is credible without the need for further information.

In addition to Plaintiff's medical records and Dr. Hollandsworth's letter, there is evidence that Plaintiff was experiencing problems on the day of the scheduled INE. Plaintiff arrived as scheduled, gave Dr. Nies the letter from Dr. Hollandsworth, and stated that she was not refusing the INE, but could not participate. (*Id.* at 688.) Dr. Nies observed that Plaintiff ambulated with a cane and her husband's assistance, and that Plaintiff required help to complete the forms because her right hand was bandaged. (*Id.*) Plaintiff stated in her second appeal letter that it took her three hours to get ready that morning. (*Id.* at 764.)

The medical evidence before the Court is persuasive that Plaintiff's condition was serious and that she was experiencing progressively worsening physical and neurological symptoms as her MS treatments failed. The fact that Plaintiff was able to submit to an INE in March 2006 does not convince the Court that she was able to do so nearly a year later, particularly considering that Plaintiff had recently experienced a medical emergency that resulted in an extended hospital stay and additional therapy. There is also every indication that Plaintiff cooperated with Reed Group's request that she submit to an INE, to the extent possible. Plaintiff cooperated with Reed Group's request for a doctor's letter to certify that she was unable to participate in the INE, and she arrived at the scheduled time for the INE

-21-

with the letter that had also been faxed to Reed Group a week earlier. If Dr. Hollandsworth's letter was not sufficiently detailed, Reed Group could have contacted him to inquire about Plaintiff's status and her ability to participate in an INE with possible accommodations at a later date. If Reed Group needed multiple doctors to confirm Plaintiff's inability to participate in the INE and comment on her medical conditions, Reed Group could have informed Plaintiff of this need, and Plaintiff likely would have complied accordingly. For that matter, Reed Group could have inquired of Plaintiff herself how or when she might be able to participate in an INE.

Reed Group took none of those actions; instead, Defendants terminated Plaintiff's benefits for refusal to cooperate with the evaluation of her disability. This was in the absence of any evidence that Plaintiff was refusing to cooperate with the Plan requirements, and Defendants have not advanced any valid evidence that Plaintiff was medically able to participate in the INE but willfully refused to cooperate with this evaluation. Accordingly, the Court finds that Defendants' decision to terminate Plaintiff's benefits was substantively arbitrary and capricious. The Court therefore **OVERRULES** Defendants' objections to Magistrate Judge Lee's finding that Defendants' decision was procedurally and substantively arbitrary and capricious. The Court **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's findings in this regard, as well as her conclusion that Plaintiff's motion for judgment on the pleadings should be **GRANTED** to the extent that it requests a reversal of Defendants' termination of benefits for being arbitrary and capricious.

### E.    Retroactive Benefits

Plaintiff objects to Magistrate Judge Lee's conclusion that retroactive benefits should not be awarded because Defendants had not determined if Plaintiff was totally disabled for any occupation.  (Pl.'s Objs. at 2-3; R&R at 29-32.)  Magistrate Judge Lee found that Defendants' explanation for their denial of Plaintiff's LTD benefits was best interpreted as a statement that Defendants had insufficient information from which to determine if Plaintiff was totally disabled for any occupation.  (R&R at 30.)  Magistrate Judge Lee found that Defendants' determination that it had insufficient evidence to make that eligibility determination was not arbitrary and capricious, and therefore concluded that an award of retroactive benefits would be inappropriate, as Defendants had not made that decision. (*Id.*)

The Court agrees with Magistrate Judge Lee that Defendants essentially terminated Plaintiff's benefits because there was a lack of information available to them at the time to substantiate Plaintiff's disability.  Pursuant to Defendants' Plan requirements, Defendants had to determine if Plaintiff was totally disabled from performing any occupation before granting permanent LTD benefits.  (AR at 9.)  There cannot be an award of retroactive LTD benefits based on a determination that Plaintiff is eligible for permanent, any occupation LTD benefits, because no such determination was ever made by Defendants.[3]

---

[3]    The Court does not find that Defendants' failure to make a disability determination rises to the level of arbitrary and capricious conduct for two reasons.  First, the Court notes that Defendants did not have the record of Plaintiff's March 2006 INE with Dr. Fuchs at the time they terminated her benefits, and that report may substantially assist in Defendants' determination.  Although the Court acknowledged that there was an inconsistency between the Defendants' assertion that they did not have sufficient information to make a disability determination and Plaintiff's SSD award, the Court agrees with Magistrate Judge Lee that this inconsistency carries little weight under the circumstances present in this case.

Second, the Court notes again that some of the problems surrounding this termination of

Furthermore, the Court cannot make the determination that Plaintiff was totally disabled as of January 10, 2007. Because the Plan at issue gives the administrator authority to determine eligibility, the Court can only review Defendants' decision to terminate benefits under the arbitrary and capricious standard. *See Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005). Accordingly, the Court **OVERRULES** Plaintiff's objection and **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's conclusion that an award of retroactive benefits by this Court would be inappropriate.

### F. Defendants' Counterclaim

Defendants object to Magistrate Judge Lee's conclusion that Defendants were not entitled to the $3,314.78 in overpayments to Plaintiff because the decision to terminate Plaintiff's benefits was arbitrary and capricious. (Def.s' Objs. at 13.) Defendants requested this alleged overpayment from Plaintiff when they denied her benefits as of the back date of January 10, 2007. Because the Court has agreed with Magistrate Judge Lee's conclusion that Defendants' decision to deny Plaintiff's benefits was arbitrary and capricious, the Court also agrees with the conclusion that Defendants are not entitled to the alleged overpayment of benefits. Accordingly, Defendants' objections are **OVERRULED** and the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's conclusion

---

benefits could be attributed to the switch from Broadspire to Reed Group as the entity that handled Plaintiff's LTD claim. Furthermore, because Reed Group's notes reflect that Plaintiff's primary disability is generalized anxiety disorder rather than multiple sclerosis, Reed Group's designation of her disability and method of substantiating that disability may need to be reviewed and adjusted accordingly. The volume of medical records relating to Plaintiff's progressive condition as a result of MS is substantial and very consistent. There may be a way for Defendants to substantiate Plaintiff's disability using the medical records currently available in the record. Failing that, perhaps Defendants can assess what examination would be necessary to independently verify Plaintiff's disability, and provide accommodations for Plaintiff if there is a reasonable basis for Plaintiff to assert that such an examination would aggravate her medical condition.

that Defendants' counterclaim be **DENIED**.

G.     **Attorneys' Fees**

Plaintiff objects to Magistrate Judge Lee's finding that her request for attorneys' fees is premature, but only asserts this objection to the extent necessary to preserve the opportunity to re-file such motion at the appropriate time.  (Pl.'s Objs. at 3.)  The Court agrees with Magistrate Judge Lee's determination and finds that Plaintiff's request for attorneys' fees is currently unripe, but Plaintiff may file such motion at the appropriate juncture.  Accordingly, Plaintiff's objection is **OVERRULED** and the Court **ACCEPTS** and **ADOPTS** that portion of Magistrate Judge Lee's report and recommendation.

IV.     **CONCLUSION**

Based on the above, the Court **ORDERS** the following:

•     Magistrate Judge Lee's Report and Recommendation [Court Doc. 36] is **ACCEPTED AND ADOPTED** in its entirety;

•     Plaintiff's Objections [Court Doc. 37] to Magistrate Judge Lee's Report and Recommendation are **OVERRULED**;

•     Defendants' Objections [Court Doc. 38] to Magistrate Judge Lee's Report and Recommendation are **OVERRULED**;

•     Plaintiff's and Defendants' Motions to Strike [Court Docs. 29 & 32] are **DENIED**;

•     Defendant's Counterclaim [Court Doc. 21] is **DENIED**;

•     Plaintiff's Motion for Judgment on the Pleadings [Court Doc. 30] is **GRANTED**;

•     Defendants' decision to terminate Plaintiff's LTD benefits is **REVERSED**; and

•     Plaintiff's claim is **REMANDED** to Defendants for a determination of whether

Plaintiff is totally disabled under the "any occupation" standard.

**SO ORDERED** this 8th day of February, 2010.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE