UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


PENNY ARVIDSON RICHARDS,     )
    )
    Plaintiff,     )
    )
v.     )      No. 2:08-CV-279
    )      *Mattice / Lee*
JOHNSON & JOHNSON, *et al.*,     )
    )
    Defendants.     )


## REPORT AND RECOMMENDATION


Before the Court is the motion of Plaintiff, Penny Arvidson Richards under ERISA[1] for an

award of attorney's fees in the amount of $49,640.50 and nontaxable expenses in the amount of

$226.91 [Doc. 42].[2]  Plaintiff has also filed a bill of costs with the Clerk in the amount of $675.00

[Doc. 44], and the Clerk has taxed those costs to Defendants [Doc. 45].  Defendants have moved to

strike both Plaintiff's bill of costs and the Clerk's letter taxing those costs to Defendants on the

ground that costs are not to be taxed under ERISA as a matter of course, but only in the Court's

discretion [Doc. 47].  Plaintiff, in response, has moved to amend its motion for attorney's fees to

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA") § 502(g), 29 U.S.C. § 1132(g).  Section 502(g) empowers "the court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party."

[2] The motion has been fully briefed [Doc. 43, 52, 55] and has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 13].

include a motion for the $675.00 in costs [Doc. 51]. Defendants do not object to the amendment [Doc. 54]. Accordingly, Defendants' motion to strike and Plaintiff's motion to amend [Doc. 47, 51] are both **GRANTED**. And for the reasons below, I **RECOMMEND** Plaintiff's amended motion for fees, expenses, and costs be **GRANTED** in the amount explained below.

## I.    BACKGROUND

### A.    Medical Background and Administrative Proceedings

Plaintiff brought this ERISA[3] action against Defendants seeking review of Defendants' termination of Plaintiff's benefits under the Long Term Disability ("LTD") Income Plan for Choice Eligible Employees of Johnson & Johnson and Affiliated Companies ("Plan"). The facts preceding the termination of Plaintiff's benefits are recounted in detail in the previous Report and Recommendation [Doc.36] and the Court's Memorandum and Order [Doc. 41], but a summary is provided here. Plaintiff was insured under the Plan when she experienced an "abrupt syncopal event" and lost consciousness in July, 2004. She returned to work, but was diagnosed the following month with relapsing/remitting multiple sclerosis ("MS"), which was characterized by waxing and waning symptoms. Although she wished to continue working, Plaintiff's psychiatrist would not release her to return to work. In order to "substantiate" Plaintiff's doctors' disability, Plaintiff was referred for a "standard battery" independent neuropsychological examination ("INE"). Her doctors believed the testing might be harmful to her, but Defendants required her to participate in the INE anyway. She did so in October, 2005. That evaluation "took longer than expected" and Plaintiff "became overwhelmed" and was "emotional and almost hysterical at times." Plaintiff's symptoms

_____

[3] ERISA provides for judicial review of adverse benefits decisions at § 502(a), 29 U.S.C. 1132(a).

were "true and genuine," with no evidence of malingering, and the evaluator concluded she was unable to work in her former job.

Shortly thereafter, Plaintiff was admitted to the hospital for weakness and paralysis in the left side of her body. She submitted an application for LTD benefits, which was approved in January, 2006, under the "regular occupation" definition of total disability, which meant that Plaintiff was unable to perform her regular occupation. The Plan provides that a period of long term disability lasting greater than 12 months must meet the "any occupation" definition of total disability, which requires an inability to perform any occupation. Also in early 2006, one of Plaintiff's doctors recommended neuropsychological testing, so in March, 2006, Plaintiff received a neuropsychological examination by Dr. Kathleen Fuchs. Dr. Fuchs concluded Plaintiff was likely experiencing a disabling level of anxiety, depression, and possibly mania, and was "totally disabled from a cognitive and emotional standpoint." Significantly, soon after this test was completed, Broadspire, the third-party administrator for the Plan was replaced by Reed Group, and it appears that Defendants were unaware of Dr. Fuchs' evaluation until after Plaintiff's benefits were terminated. However, Plaintiff did provide Reed Group with Dr. Fuchs' name as one of her physicians in a release of medical information.

In mid-2006, Plaintiff applied for Social Security disability insurance benefits ("DIB"), and three of her physicians wrote jointly to the agency to explain that Plaintiff's "organic" psychiatric symptoms resulted from physical changes brought about by MS. Plaintiff was found eligible for DIB. Then, in September, 2006, Plaintiff was hospitalized for three weeks when she experienced a severe reaction to one of her medications. Plaintiff telephoned Reed Group in October, 2006, to report her hospitalization, but other than making a notation of the telephone call, Reed Group did

not document Plaintiff's hospital stay.  Furthermore, it appears Reed Group considered Plaintiff's disability claim to be based not on MS, but on a diagnosis of generalized anxiety disorder: Reed Group did not even list MS as a diagnosis in Reed Group's records until the day Plaintiff called to report her hospitalization.

As the 12-month deadline for the "regular occupation" to "any occupation" transition approached, Defendants requested attending physician statements from Plaintiff.  Each of those statements were in accord: Plaintiff was totally disabled with respect to her previous job or any other job and her condition was unlikely to reverse.  Before receiving the attending physician statements, however, Defendants scheduled Plaintiff for another INE to determine whether Plaintiff could perform any occupation and, if not, whether her condition could be expected to change.  Plaintiff called Defendants to complain she was unable to attend an eight-hour test, and Defendants advised her to submit a letter to her doctor to that effect.  Plaintiff did so.  Dr. Hollandsworth's letter explained that Plaintiff's "multiple disabling neurological symptoms" were "unequivocally and solely a result of her [MS]" and she was "unable to complete a standard neuropsychological testing battery."

Although they acknowledged receipt of the letter, Defendants informed Plaintiff she was expected to attend the INE.  Plaintiff arrived on the scheduled date, walking with a cane and the assistance of her husband.  She informed the evaluator she could not complete the test under "doctor's orders" but stated she was not refusing the [INE].  Dr. Nies reviewed Plaintiff's file (which, as noted, did not include Dr. Fuchs' neuropsychological exam) and concluded she did not have enough information to determine whether Plaintiff could perform any occupation.  Subsequently, in February, 2007, Defendants terminated Plaintiff's benefits retroactive to January

10, 2007, for "non-compliance for failing to participate in the [INE]" and informed her she was expected to repay her "overpayments."

Plaintiff appealed the decision and requested "any and all documents which relate[d] to [her] claim," but Defendants did not produce the Plan documents or any records from Broadspire, the previous third-party administrator. It appears, therefore, Reed Group was not in possession of many of Plaintiff's previous medical records, which may explain why its records did not show Plaintiff had been diagnosed with MS. Plaintiff procured those records directly from Broadspire and sent them to Reed Group. Plaintiff's appeal was denied with the explanation that "you did not supply any medical documentation with your appeal request to support why you were medically unable to complete the [INE]." Plaintiff requested a second appeal, and attempted to explain her medical condition by reporting that in the four months prior to the requested INE, she had spent 23 days in the hospital and was simply in no condition to undergo a full-day examination. That second appeal, too, was denied "for lack of compliance with the Plan requirement to cooperate with respect to the evaluation of your disability."

B.      Legal Proceedings in this Court

1.      Motions to Strike Portions of the Administrative Record

Plaintiff filed suit fourteen months later, and Defendants countersued for repayment of "overpayments." Defendants attempted to bar Plaintiff's suit, noting that it was filed outside the limitations period for judicial review specified in the Plan--12 months. Plaintiff moved to strike the Plan documents from the record because she never received them. Plaintiff had access only to the summary plan document ("SPD"), which did not specify a limitations period. Defendants moved to strike the SPD. This Court denied both motions on the basis that all the documents were part of

5

the corpus of "facts known to the plan administrator at the time he made his decision." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

## 2. Limitations Period

Turning to the applicable limitations period, this Court determined that Plaintiff's claim was not untimely. Although it was filed outside the 12-month limitations period specified in the Plan, the Court found the Plan was not controlling, and that the six-year state-law statute of limitations governed Plaintiff's claim. In order to reach this conclusion, the Court was called upon to reconcile two seemingly contradictory lines of precedent. If the terms of an SPD conflict with the terms of the Plan, the SPD will control. *Edwards v. State Farm Mut. Auto Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988). The Sixth Circuit Court of Appeals ("Sixth Circuit") held that an SPD's silence created a conflict with Plan documents in *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 246, 249-50 (6th Cir. 1996). On the other hand, the Sixth Circuit Court of Appeals has also broadly stated that where the SPD is merely silent, it cannot conflict with the Plan. *Sprague v. General Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998). This Court analyzed numerous cases and held that, in our circuit, an SPD's silence will create a conflict with Plan documents only if the SPD is silent with respect to information it is required by law to contain. In this case, the SPD was required by law to contain any shortened limitations period, and thus the SPD's silence controlled and Plaintiff's claim was timely under the background state statute of limitations.

This Court also concluded, in the alternative, that even if the SPD did not control, the limitations period should be equitably tolled because she was diligent in pursuing her rights and her ignorance of the limitations period was attributable to Defendants' conduct in failing to provide her with that information.

### 3. Factors Affecting the Application of the Arbitrary and Capricious Standard of Review

The Plan gave Defendants the discretion to make determinations of fact and interpret Plan terms, and the Court's review was therefore pursuant to the deferential arbitrary and capricious standard of review. *Calvert v. Firestar Finance, Inc.*, 409 F.3d 286, 292-92 (6th Cir. 2005). The application of that standard was informed, however, by several factors, which included whether the plan administrator was operating under a conflict of interests and whether the administrator failed to consider the successful award of social security benefits. *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444-45 (6th Cir. 2009). Plaintiff argued that both factors weighed in her favor. This Court agreed with Defendants that there was no conflict of interest. The Court also concluded, however, that it was somewhat inconsistent that Plaintiff was required by the Plan to apply for DIB and was awarded DIB because she was disabled, but Defendants nonetheless determined they did not have enough information to know whether Plaintiff was disabled or not.

### 4. Termination of Plaintiff's Benefits

Defendants terminated Plaintiff's benefits for failure to attend an INE and for failure to cooperate. The Court agreed with Plaintiff that both of these rationales were adequate, even through the deferential lens of arbitrary and capricious review. With respect to the former rationale, the Court found that Plaintiff did in fact "attend" the INE, and that Defendants' justification for terminating Plaintiff's benefits hinged on the latter rationale. With respect to the "failure to cooperate," the Court found Defendants' decision was procedurally defective because it did not explain to Plaintiff how her conduct constituted a failure to cooperate, as required by law, and was substantively defective because the record could not support a conclusion that Plaintiff did not cooperate--i.e., that she was able, but unwilling, to participate in the INE.

7

### 5. Remedy

Plaintiff sought reversal of Defendants' decision and the retroactive award of benefits. While the Court agreed with Plaintiff that Defendants' termination of her LTD benefits should be reversed, the Court remanded the matter for further proceedings. Defendants had determined that without the requested INE, they had insufficient information to decide whether Plaintiff was disabled under the any occupation standard. That was a decision entrusted by the Plan's terms to the Plan administrator's discretion, and it would have been inappropriate for the Court to make the decision in the first instance. The Court observed, however, that Defendants did not have the record of Dr. Fuchs' evaluation when her benefits were terminated and noted that, on remand, Defendants might be able to make that determination without subjecting Plaintiff to yet another INE. Finally, the Court cautioned that if an INE remained necessary, Defendants could make accommodations for Plaintiff's condition in structuring the evaluation.

### 6. Defendants' Counterclaim

Because Defendants' termination of Plaintiff's LTD benefits was arbitrary and capricious, the Court denied Defendants' counterclaim.

## II.    ANALYSIS

### A.    Entitlement to Fees and Costs: the *King* Factors

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). In exercising its discretion under this section, a court must consider the following five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer

> a common benefit on all participants and beneficiaries of an ERISA
> plan or resolve significant legal questions regarding ERISA; and (5)
> the relative merits of the parties' positions.

*Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998) (citing *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985)). "Because no single factor is determinative, the court must consider each factor before exercising its discretion." *Id.* (citing *Wells v. United States Steel*, 76 F.3d 731, 736 (6th Cir.1996)).

Although there is a significant split of authority between and within the circuits, this Court has recognized that fees may be awarded to a party who, although she "has not experienced ultimate success in the sense of winning h[er] benefits claim," has nonetheless "received another shot at those benefits by achieving a remand." *McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d 731, 733-36 (E.D. Tenn. 2009); *see also Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 974 (W.D. Mich. 2007); *Elliott v. Metropolitan Life Ins. Co.*, 2007 WL 1558519 (E.D. Ky. 2007); *Winpisinger v. Aurora Corp.*, 469 F. Supp. 782 (N.D. Ohio 1972). *But see Hardt v. Reliance Standard Life Ins. Co.*, 336 F. App'x 332 (4th Cir. 2009) (*cert. granted* 130 S.Ct. 1133 (2010)).

### 1.    Culpability or bad faith

The first factor will favor an award of fees if Defendants acted in bad faith *or* acted culpably. There is a distinction between the two. *See Hoover v. Provident Life and Acc. Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002). Culpable conduct may include, for example, a selective review of the record or ignoring the evidence that the claimant is disabled. *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377 (6th Cir. 2009). In order to satisfy this factor, the culpable conduct must have actually caused the denial of benefits. *Id.* Here, I **FIND** Defendants acted culpably by essentially ignoring all the evidence of Plaintiff's disability and focusing instead on

Plaintiff's supposed refusal to cooperate with the INE. Relatedly, Defendants also failed to explain to Plaintiff why her doctor's letter was inadequate, in violation of federal regulations, and made it impossible for her to perfect her claim. While these actions may not rise to the level of bad faith, they were culpable, and they did cause the improper denial of Plaintiff's benefits.

Defendants argue that their inability to determine whether Plaintiff was caused not by their own failings, but by Plaintiff's actions in "refus[ing] to go through with the INE." This Court's opinion, however, forecloses that argument. The Court found that Plaintiff cooperated with Defendants' request that she submit to an INE, to the extent possible. The denial of Plaintiff's benefits, as Plaintiff has argued, was therefore tantamount to a decision that Plaintiff was too disabled to prove her disability. I **FIND** this factor weighs heavily in Plaintiff's failure.

### 2. Opposing party's ability to satisfy a fee award

Defendants do not dispute they would be able to satisfy the fee award. A party's ability to pay fees is not dispositive, however, and must be weighed alongside the other factors. *Firestone Tire & Rubber Co. v. Neusser*, 810 F.3d 550, 557-58 (6th Cir. 1987). Citing a case from the Southern District of New York, Defendants suggest that "while a defendant's *inability* to pay an award weighs in its favor, its *ability* to pay generally is neutral in effect." *Alfano v. CIGNA Life Ins. Co. of N.Y.*, 2009 WL 890626, at *2 (S.D.N.Y. 2009). That is not the law in our circuit. The teaching of *Firestone Tire* does not imply that an ability to pay fees is entitled to less weight than the other factors, but merely that "this factor, like each of the *King* factors, is not dispositive." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 531 (6th Cir. 2008). *See also Moon v. Unum Provident Corp.*, 461 F.3d 639, 644 (6th Cir. 2006) (weighing an ability to satisfy the award in the plaintiff's favor). I **FIND** this factor weighs in favor of awarding fees.

### 3. Deterrent effect of an award

As Defendants point out, innocent mistakes cannot be deterred by any sanction the Court can impose, including an award of attorney's fees. *See Majestic Star*, 581 F.3d at 377-78 (finding no deterrent effect where a plan administrator merely misinterpreted a plan provision). Like the defendant in *Majestic Star*, Defendants did misinterpret a term in the Plan--"cooperate." Standing alone, such a mistake might not support a deterrent award of fees. But Defendants also failed to inform Plaintiff why they believed her actions constituted a refusal to cooperate and what documentation she should have submitted in order to perfect her claim, as required by law. Defendants' disregard of the requirements of 29 C.F.R. § 2560.503-1(g) is exactly the sort of conduct that can and should be deterred by an award of fees. I **FIND** that an award of fees will deter these Defendants and other plan administrators from denying claims without the explanations required by law. I therefore **FIND** that this factor, too, weighs heavily in favor of awarding fees.

### 4. Common benefit or significant legal question

Defendants argue that this factor weighs against the award of fees because Plaintiff sought benefits only for herself in bringing this action. Defendants' position is correct. Other than the general deterrent function of an award of fees, considered under the third factor, Plaintiff has not shown that her claim would confer a common benefit on other plan participants. *See Gaeth*, 538 F.3d at 533 (deterrent effect alone does not constitute a common benefit). On the other hand, Plaintiff's claim did occasion the resolution of a significant legal question--namely, the context in which an SPD's silence may conflict with the Plan such that the provisions (or lack thereof) in the SPD will control. This Court answered that question in Plaintiff's favor. Yet, there is no indication that Plaintiff "sought to . . . resolve" this question by bringing her suit. *See Moon*, 461 F.3d at 645

(relevant inquiry under this factor is whether the significant legal question motivated the plaintiff to institute the litigation). I **FIND** this factor weighs against the award of fees.

### 5. Relative merits of the parties' positions

Finally, I **FIND** the merits of Plaintiff's position significantly outweighed Defendants' position. This Court ruled in favor of Plaintiff with respect to the limitations period governing her claim and concluded that the denial of benefits was both procedurally and substantively arbitrary and capricious. The Court did not find Defendants' position substantially justified, but stated that "Defendants have not advanced any valid evidence that Plaintiff was medically able to participate in the INE but willfully refused to cooperate with this evaluation." [Doc. 41 at 22]. The Court also found that "the volume of medical records relating to Plaintiff's progressive condition as a result of MS is substantial and very consistent." [Doc. 41 at 24 n.3]. So, although the Court did not award Plaintiff benefits, the Court remanded the matter to Defendants with the admonition that they should reassess whether any further examinations are necessary to determine whether Plaintiff is disabled, and if any remain necessary, to provide appropriate accommodations for Plaintiff's condition. *Id.* Short of a retroactive award of benefits, it is difficult to imagine a more favorable outcome for Plaintiff. I **FIND**, therefore, that this factor also weighs heavily in favor of awarding benefits.

Having reviewed all of the *King* factors, I **FIND** that four weigh in favor of awarding Plaintiff a reasonable attorney's fee, and of those, three weigh heavily in Plaintiff's favor. Because the balance tips so sharply toward an award of fees, I **RECOMMEND** Plaintiff's motion for attorney's fees be **GRANTED**.

**B.** **Amount of fees and costs**

Plaintiff supports her motion for fees, expenses, and costs with the affidavit of her attorney and a table showing detailed billing records. Plaintiff's attorney avers his firm has expended work valued at $49,640.50 and has billed $226.91 in nontaxable expenses, not including the costs submitted to the Clerk in its bill of costs. Those separate costs total $675.00. Defendants object to the amounts requested by Plaintiff on five grounds.

**1.** **Identification of the individuals who worked on case**

First, Defendants claim the amounts are not adequately supported because Plaintiff has not identified the individuals who worked on the case other than by their initials, and Defendants are therefore unable to determine whether they are attorneys, paralegals, or secretaries. Plaintiff has now submitted her counsel's affidavit explaining the identity, experience, and billing rate of each individual to work on the case [Doc. 57]. I **FIND** that the detailed billing records, as supplemented, provide adequate information to gauge the reasonableness of the requested fees.

**2.** **Fees for Clerical Tasks**

Defendants also argue that the "clerical" work of legal assistants should not be awarded in a motion for attorney's fees [Doc. 59]. Defendants' argument is well taken. Work traditionally performed by attorneys may be properly awarded in a motion for attorney's fees, because allowing subordinates to perform those tasks ultimately reduces the overall cost of litigation. *See Branson v. Astrue*, 2008 WL 2498111, at *2 (E.D. Tenn. 2008) (discussing a motion for fees under the Equal Access to Justice Act ("EAJA")). "[S]trictly clerical tasks," however, are part of the overhead cost necessary to operate any law firm, and should not be compensated by a fee award. *Allison v. City of Lansing*, 2007 WL 2114726, at *1 (W.D. Mich. 2007) (distinguishing "proofing, printing, and

13

mailing" from "professional" tasks such as "editing and revising [an] appellate brief and cross-referencing to the appendix"); *Doran v. Corte Madera Inn Best Western*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005). *See also Wilson v. Barnhart*, 2006 WL 3455071, *1 (W.D. Va. 2006) (EAJA context); *Keith v. Volpe*, 644 F. Supp. 1312, 1316 (C.D. Cal. 1986) (same). I **FIND** that the tasks attributed to paralegals in the billing records in this case are clerical in nature,[4] and I **CONCLUDE** the fees incurred due to those tasks (totaling **$1316**) should be subtracted from the fee award.

### 3. Fees incurred after remand

Next, Defendants argue Plaintiff is not entitled to fees incurred after the entry of the Court's order of remand. Plaintiff incurred fees following remand for two types of work: preparing the motion for fees and supporting briefs and preparing for further administrative proceedings. Plaintiff's counsel avers that 4.7 hours ($920 in fees) were expended solely in the process of seeking fees. Only 0.3 hours ($55 in fees) were devoted solely to preparing for remand. However, 6.7 hours ($1340 in fees) were expended on *both* projects, and Plaintiff has not been able to separate the amount of time spent for each. The amounts are inseparable because Plaintiff's counsel used "block billing" to record its work, a method described in more detail below.[5]

Defendants argue that any fees incurred in preparing for remand are not recoverable.[6] The

---

[4] Those tasks include, for example, opening a new file, copying and organizing records, document review, locating registered agents for Defendants and preparing summonses, electronic court filings, keeping track of case deadlines, and mailing copies of court documents and documents prepared by Plaintiff's attorneys to Plaintiff.

[5] On three days, February 11, 15, and 16, Plaintiff's attorneys worked both on the motion for attorney's fees and preparing for administrative proceedings on remand.

[6] The Court does not understand Defendants to argue that Plaintiff is not entitled to the fees incurred in preparing the motion for fees and supporting memoranda, but to argue rather that fees incurred preparing for remand are not recoverable.

Sixth Circuit has not squarely addressed the question, *see Seal v. John Alden Life Ins. Co.*, 437 F. Supp. 2d 674, 684 (E.D. Mich. 2006), but the Supreme Court held in a similar context that fees associated with administrative proceedings may be awarded when those proceedings are "so intimately connected" to the judicial proceedings that they may be "considered part of the 'civil action' for purposes of a fee award." *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989). The Sixth Circuit distinguished *Sullivan* in *Anderson v. Proctor & Gamble*, holding that fees incurred during the administrative exhaustion phase, before the plaintiff files suit, are not so "intimately connected" to the later suit as to be recoverable. 220 F.3d 449, 453-54 (6th Cir. 2000). In so holding, the *Anderson* court noted the "differences in the governing statutes," but emphasized that the *Sullivan* rationale, which applied to post-suit administrative proceedings, was not applicable to *Anderson*, which involved pre-suit administrative proceedings. *Id.* at 454. The *Anderson* court stated that "fees for administrative proceedings under [ERISA] should be recoverable only when the final judgment (or enforcement thereof) in the prevailing party's *suit* depends on the administrative proceedings for which fees are being claimed. *Id.*

Each of the district courts of our circuit that has addressed the applicability of *Anderson* to post-suit fees has concluded that fees incurred after a remand are recoverable. *Seal*, 437 F. Supp. 2d at 684 (holding that remand proceedings were "intimately connected" with the litigation); *Delisle v. Sun Life Assur. Co. of Canada*, 2007 WL 4547884, at *5 (E.D. Mich. 2007) (holding that post-remand fees were recoverable); *Smith v. Bayer Corp. Long Term Disability Plan*, 2006 WL 3053472, at *7 (E.D. Tenn. 2006) (same). Each of those cases, however, stood in a significantly different posture. In *Seal*, the parties jointly moved to remand a claim for consideration of information not previously presented, and the plan administrator determined on remand that the

plaintiff was entitled to benefits. 437 F. Supp. 2d at 682. Following the successful remand proceedings, the plaintiff moved for fees, which the court awarded. *Id.* at 688. Similarly, in *Smith*, the parties jointly moved for remand during the lawsuit so that the administrator could address some "procedural irregularities." 2006 WL 3053472, at *6. The court specifically retained jurisdiction over the proceedings on remand, during which the administrator determined, again, that the plaintiff was not entitled to benefits. *Id.* The court reversed that decision and awarded benefits, at which time the plaintiff moved for fees incurred during the remand. *Id.* at 6-7. The court concluded those fees were recoverable because the final judgment in the prevailing party's suit was dependent upon the outcome of the administrative proceedings. *Id.* at 7. Finally, in *Delisle*, the plaintiff won a remand but was forced to bring suit a second time, after a second denial by the plan administrator. 2007 WL 4547884, at *1. After she was awarded benefits in the second suit, she moved for fees incurred between the two suits. *Id.*

In each of these cases, the plaintiff won her benefits, either during the remand or in subsequent court proceedings, before moving for fees incurred in the administrative proceedings. Here, in contrast, Plaintiff has not yet been awarded benefits, and her motion for these fees is premature. In this posture, the fees Plaintiff incurs in preparing for administrative proceedings on remand are more akin to *pre*-suit proceedings, which are barred by *Anderson*. Plaintiff cannot challenge the decision Defendants will ultimately make (if, indeed, that decision is unfavorable) until she exhausts her available administrative remedies with respect to that decision. *See Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 440 (6th Cir. 2009). Moreover, even if Plaintiff is forced to sue Defendants a second time, there is no guarantee she will prevail, and the factors governing the award of fees (e.g., the relative merits of the parties' positions) may then militate against a fee

award. Thus, these administrative proceedings are preliminary to a second (and as yet hypothetical) lawsuit.

I **CONCLUDE**, accordingly, that Plaintiff is not entitled to the fees expended in preparing for further administrative proceedings. The amount of **$1395** should be subtracted from Plaintiff's request for fees. As noted above, the amount of fees incurred in preparing for remand is actually somewhere between $55 and $1395, but it is not possible to determine the exact figure from Plaintiff's billing chart. As Plaintiff has failed to meet her burden, the upper end of the range must be subtracted.[7]

### 4.    Block billing

Third, Defendants object that the amount of fees sought by Plaintiff is excessive. Defendants criticize Plaintiff's billing method, called "block billing." Block billing is a practice in which "each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 n.9 (10th Cir. 1998). As Defendants acknowledge, block billing is not impermissible. *See Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006). Where courts have reduced fee awards for block billing, they have done so not to punish a disfavored billing practice, but to "allay 'suspicions about whether all of the work claimed was actually accomplished or whether it was necessary.'" *Randolph v. Schubert*, 2007 WL 2220407, at *4-5 (M.D. Tenn. 2007) (quoting *Torres-Rivera v. Espada-Cruz*, 2007 WL 906176, at *2 (D.P.R. 2007). *See also Robinson*, 160 F.3d at 1284-85 (expressing concern that "sloppy and imprecise" block billing practices may

---

[7] This recommendation should not be construed to express an opinion as to whether, assuming Plaintiff wins her benefits on remand (as in *Seal*) or in a second suit (as in *Delisle*), she in entitled to fees she incurs during administrative remand.

"camouflage" the work a lawyer does); *Cummings, Inc., v. BP Products North America, Inc.*, 2010 WL 796825, at \*6 (M.D. Tenn. 2010) (declining to reduce a fee award where the court was "able to clearly ascertain what tasks were performed" and there was "no indication that [the] attorneys 'padded' their hours or billed needlessly or excessively.").

Here, the records submitted by Plaintiff are neither sloppy nor imprecise. With the exception of the hours spent preparing for remand versus preparing the motion for fees (explained above), they adequately detail the tasks performed by each attorney and assistant. I **FIND** no indication the hours billed were "padded" or that Plaintiff's attorneys billed "needlessly or excessively." Because Defendants have pointed to nothing that would arouse suspicions about whether the work was either performed or necessary, I **CONCLUDE** that a reduction of the fee award for block billing would be inappropriate.

### 5. Duplicative or excessive billing

Fourth, and finally, Defendants object that some of the time spent was duplicative or excessive. Specifically, Defendants point to 27 days during which both EWR ("Mr. Reecher") and DF ("Ms. Figueiras") spent time working on the same briefs, including conferring about those briefs. A review of these dates, however, reveals nothing out of the ordinary. On May 6, 2009, for example, Ms. Figueiras "revise[d] Brief and forwarded to Mr. Reecher for review" and Mr. Reecher spent six minutes reading an "[e]mail message from Ms. Figueiras regarding revisions to the brief." As another example, on April 8, 2009, Mr. Reecher sent an email to Ms. Figueiras and conferred with her about the brief, and Ms. Figueiras began outlining the argument and conducting legal research. In short, it is apparent from the billing records that Mr. Reecher worked on Plaintiff's briefs in a supervisory role and Ms. Figueiras did much of the research and writing. I **FIND** nothing

improper about two attorneys, in different roles, working collaboratively on the same case.

Relatedly, Defendants argue that the time spent by Ms. Figueiras in writing and editing the brief in support of benefits--some 33.5 hours drafting and 14.4 hours editing--was excessive. I **FIND** that six business days (48 hours) spent preparing a brief in a case, like this one, where a tremendous amount is at stake,[8] is not an excessive amount of time. That is especially true here, where the brief analyzed a complex set of facts in a difficult area of law and effectively articulated the legal shortcomings of Defendants' actions.

Defendants have not objected to the per-hour fee charged by any of the individuals who worked on Plaintiff's case, and I **FIND** the billing rates of $200 per hour of partner attorney work, $170 per hour of associate attorney work, and $70 per hour of paralegal work to be reasonable. Accordingly, I **FIND** the fee request of **$49,640.50**, less **$1395** in fees incurred preparing for remand and **$1316** in clerical work, to be reasonable. *See*, *e.g.*, *Smith*, 2009 WL 676774, at *4 (approving ERISA award of $287.50 per hour of attorney work and $97.50 per hour of paralegal work).

In addition, Defendants have not objected to the amount of expenses or costs, except to the extent they oppose an award of fees in general. I also **FIND** Plaintiff's request for expenses of **$226.91** and costs of **$675.00** to be reasonable.

---

[8] According to Plaintiff's brief in support of benefits, Plaintiff's disability claim stood to cost Defendants nearly $1 million.

## III.    CONCLUSION

For the reasons stated above, I **RECOMMEND**:[9]

> (1)    Plaintiff's motion for attorney's fees, costs, and expenses [Doc. 42] be **GRANTED** and
>
> (2)    Plaintiff be awarded fees in the amount of $46,929.50, costs in the amount of $675.00, and expenses in the amount of $226.91, for a total of **$47,831.41**.


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[9] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).